UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-61626-CIV-MCALILEY
CONSENT CASE

IRA KATZ, et al.,

    Plaintiff,

v.

FIFIELD REALTY CORP., et al.

    Defendants

_____/

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

Pending before the Court are Plaintiffs' Motion for Summary Judgment [DE 173] and Defendants Fifield Realty Corp.'s and Ocean Marine Yacht Club, LLC's Motion for Summary Judgment, both motions being directed to Counts I and VI of the Second Amended Complaint. [DE 174]. At one time more than twenty plaintiffs sought relief in this action, but all but Plaintiffs Isabel M. Gutierrez and Janior Perez have since settled their claims. At a recent a status conference, the parties told me that final settlement might be facilitated by my resolving the parties' motions for summary on Plaintiffs' claims under the Interstate Land Sales Full Disclosure Act ("ILSA"), Counts I and VI, as these are the only claims by which Plaintiffs seek their preferred remedy of rescission.

Following the status conference, I issued a Case Management Order that stayed consideration of the summary judgment motions except as to Counts I and VI, and directed the parties to provide supplemental memoranda that address just those Counts. [DE 203].

Pursuant to my Order, Plaintiffs and Defendants filed supplemental memoranda and responses thereto. [DE 205, 204, 208, 209]. For the reasons set forth below, I grant Defendants' Motion for Summary Judgment on Counts I and VI of the Second Amended Complaint and deny Plaintiffs' Motion for Summary Judgment on those same counts.[1]

## I.     Background

This action was initially brought on behalf of a putative class of buyers who each entered into a pre-construction purchase agreement for units at the luxury condominium complex Ocean Marine Yacht Club, on the Intercoastal Waterway in Hallandale Beach, Florida, between December 2004 and January 2006. [DE 1]. On April 8, 2009, I denied class certification and allowed the original plaintiffs to amend their complaint to join additional plaintiffs. [DE 89]. Perez and Gutierrez joined the lawsuit at that time. Both had signed a pre-construction purchase agreement on March 6, 2006, to purchase Unit 1812 at the Ocean Marine Yacht Club Condominium for $475,000.00 (the "2006 Contract"). [DE 151-3, pp. 2, 13].

Beginning in 2004, purchasers, including Plaintiffs, received certain original condominium documents presented to pre-construction purchasers, including the Property Report and Prospectus, that described the project as including a 48-slip marina, as well as a large heated pool and pool deck, fitness room, lounge, library and business center. [DE 173,

---

[1] In light of the conclusions reached in this Order and the fact that the pending motions for summary judgment involve plaintiffs who have settled their claims, I am denying the both motions for summary judgment on the remaining counts without prejudice. The parties will have an opportunity to renew their motions should they wish to do so.

p. 4, ¶ 2; 175-1, pp. 8-9; 182-1, ¶¶ 6-7]. Plaintiffs testified that the 48-unit marina was an important selling point and that they would not have entered into the 2006 Contract had they known that the developer did not have the permits to build the marina. [DE 151-2, p. 38; 170-1, ¶ 4].

Defendants amended the original condominium documents in July 2007, and on or before October 1, 2007, mailed a black-lined version of those documents (highlighting the changes) to all unit purchasers, including Plaintiffs. [DE 151-8, p. 18; 182-1, ¶¶ 9, 14]. These amended documents disclosed for the first time that construction of the development had begun without the necessary permits for the marina. [DE 182-1, ¶ 43]. The amended documents also showed changes to the size of the pool and spa, and alterations to the design of the first floor, including the elimination of the library and changes to some of the other amenities. [DE 182-1, ¶¶ 44, 45].

In January 2008, as part of their mortgage application, Plaintiffs had Unit 1812 appraised; that report showed that the market value had dropped below the original purchase price, to $450,000.00. [DE 151-4]. In light of the appraisal, on January 28, 2008, Plaintiffs and Defendant Ocean Marine entered into an Amendment to Purchase Agreement, that provided that the parties would enter into a new purchase agreement. That Amendment included the following language:

> 2.     Buyer expressly agrees it will execute a new purchase agreement for the same Unit with a reduced purchase price (the "Revised Purchase Agreement").
>
> 3.     Provided that Buyer executes the Revised Purchase Agreement and the

3

statutory rescission period expires without Buyer rescinding the Revised Purchase Agreement, Seller agrees that (I) the Deposits under the [original] Agreement will be transferred to the Revised Purchase Agreement and (ii) the [original] Agreement will automatically be deemed terminated.

[DE 151-5, p. 2; 182-1, ¶ 18]. On the same date, Plaintiffs entered into the Revised Purchase Agreement (the "2008 Contract"), which contained the following provision: "This Agreement is the entire contract for sale and purchase of the Unit . . . . This Agreement contains the entire understanding between Buyer and Seller. **Any current or prior agreements, representations, understandings or oral statements of sales representatives or others, if not expressed in this Agreement, the Condominium Documents or in brochures for the Condominium, are void and have no effect. Buyer agrees that Buyer has not relied on them.**" [DE 151-6, p. 14; 182-1, ¶ 19] (emphasis in original).

In the 2008 Contract, Plaintiffs also acknowledged their receipt of the July 2007 Prospectus. That Prospectus disclosed that construction of the marina required permits that had not yet been approved and stated that "[e]ach purchaser agrees and understands that [] there is no assurance of the development of a Marina Area and purchaser has not relied upon any assurances that the Marina Area would in fact be developed or not developed." [DE 151-6, pp. 16-17; 151-8. pp. 16, 18].

Plaintiffs did not exercise their statutory right to rescind, and on February 6, 2008, pursuant to the 2008 Contract, they closed on their Unit. [DE 182-1, ¶ 20]. Over a year after closing, Plaintiffs brought this action against Defendants charging that the original condominium documents they received in connection with the 2006 Contract contained

4

material omissions and misrepresentations in violation of ILSA. They seek rescission of the 2006 Contract, or in the alternative, damages. [2]

## II.   Analysis

On a motion for summary judgment, the moving party has the burden of showing the absence of a genuine issue as to any material fact. *Hilburn v. Murata Elec. North Am. Inc.*, 181 F.3d 1220, 1225 (11th Cir. 1999). The court views the evidence, and all factual inferences arising from it, in the light most favorable to the nonmoving party. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). However, "[t]he mere existence of a scintilla of evidence in support of the nonmovant's position will be insufficient; there must be evidence on which the jury could reasonably find for the nonmovant." *Lopez v. Top Chef Invest., Inc.*, No. 07-21598-CIV, 2007 WL 4247646, * 1 (S.D. Fla. Nov. 30, 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

Both Plaintiffs and Defendants have moved for summary judgment on Counts I and VI, which allege that the disclosures given to Plaintiffs in connection with their execution of the 2006 Contract, violated § 1703(a) of ILSA. Defendants contend that they are entitled to summary judgment because, under the plain terms of the Amendment to Purchase Agreement, and the merger provision in the 2008 Contract, the 2006 Contract was terminated when Plaintiffs executed the 2008 Contract and chose to not exercise their statutory right to rescind. Because the 2006 Contract is a nullity, Defendants argue, no ILSA claim can

---

[2] Counts I and VI do not assert a claim under the 2008 Contract.

survive regarding the disclosures given Plaintiffs when they signed that contract.

Defendants also make two additional arguments. The first addresses Count VI, which Defendants argue includes the element of reliance. Defendants assert that, even if Plaintiffs could still bring a claim on the 2006 Contract, that claim must fail because when Plaintiffs closed on the Unit in February 2008, they had received the amended documents which disclosed the status of the marina and other amenities. Thus, by that time, Plaintiffs could no longer claim to have reasonably relied on the representations made in the original Property Report and other disclosure documents, such as the Prospectus. [DE 204, pp. 5]. Second, as to Count I which addresses disclosures in the Property Report, Defendants maintain that the marina is not a "recreational facility" as defined by ILSA and therefore, ILSA did not require them to make disclosures in the Property Report regarding the marina permitting process. [DE 204, p. 5].

Plaintiffs, for their part, argue that they are entitled to summary judgment because the undisputed evidence establishes that the original Property Report failed to disclose the lack of permitting for the marina (which they contend is a "recreational facility"), thereby violating § 1703(a)(1)(C) of ILSA. Plaintiffs further argue that the changes in the amended Prospectus make clear that the original Property Report and other disclosure documents were misleading under § 1703(a)(2). [DE 205, pp. 1-3].

According to Plaintiffs, the 2008 Contract has no effect on their ILSA claims, because these claims are based on Plaintiffs' statutory rights, not the 2006 Contract, and they did not

6

release these claims when they signed the Amendment and 2008 Contract. Plaintiffs also argue that reliance is not an element of their claim in Count VI under § 1703(a)(2)(A)-(C) and that the undisputed evidence shows that Defendants misrepresented the status of the marina and other amenities in the original condominium documents. [DE 205, p. 3]. Plaintiffs ask me to rescind their agreement to purchase the Unit or, alternatively, for money damages. [DE 205, pp. 4-5].

### A.   Plaintiffs cannot bring their claims in connection with the terminated 2006 Contract

The undisputed record evidence establishes that, in January 2008, the parties executed an Amendment to Purchase Agreement which provided that, upon execution of the 2008 Contract and expiration of the statutory rescission period "the [2006 Contract] will automatically be deemed terminated." [DE 151-5, p. 2]. It also is undisputed that Plaintiffs executed the 2008 Contract, and did not exercise their statutory right to rescind that contract. [DE 174, ¶¶ 12-13]. Thus, pursuant the plain language of the Amendment to Purchase Agreement, the 2006 Contract was terminated when the statutory period to rescind the 2008 Contract expired.

Moreover, the 2008 Contract contains this merger clause:

This Agreement contains the entire understanding between Buyer and Seller. **Any current or prior agreements, representations, understandings or oral statements of sales representatives or others, if not expressed in this Agreement, the Condominium Documents or in brochures for the Condominium, are void and have no effect. Buyer agrees that Buyer has not relied on them.**

7

[DE 151-6, p. 14, ¶ 39](emphasis original). In Florida, "[t]he well established rule of law is that a contract may be discharged or extinguished by merger into a later contract entered into between the parties in respect to the same subject which replaces the original contract." See *Aly Handbags, Inc. v. Rosenfeld*, 334 So. 2d 124, 126 (Fla. 3d DCA 19760. Following this rule, the 2008 Contract is the operative contract between the parties.

Plaintiffs argue that the termination of the 2006 Contract, and its replacement with the 2008 Contract, does not negate their ILSA claims because their claims are statutory, not contractual, in nature, and therefore are not extinguished by the later contract. Plaintiffs premise their argument on the language of § 1703(a), which regulates disclosures made in connection with sales and *offers to sell*, and argue that they would have a claim against Defendants under ILSA even if they had not signed an agreement to buy the Unit. [DE 209, p. 2].

Plaintiffs' argument ignores 15 U.S.C. § 1709(a), the statutory provision that creates their private right of action under ILSA. That section provides that "[a] purchaser or lessee may bring an action at law or in equity against a developer or agent *if the sale* or lease was made in violation of section 1703(a) of this title." 15 U.S.C. § 1709(a) (emphasis added). Thus, Plaintiffs' statutory right to bring a private action for alleged violations of § 1703(a) is dependant on those alleged violations occurring in connection with *a sale*. The only sale Plaintiffs allege was made in violation of § 1703(a), was the sale contemplated by the 2006 Contract, which was extinguished. Because the 2006 Contract was terminated by the parties'

Amendment to Purchase Agreement, and replaced by their 2008 Contract, the 2006 Contract

can no longer satisfy the requirement of a "sale" necessary to support Plaintiffs' ability to

bring a private right of action under ILSA.[3]

Plaintiffs rely on *Gastaldi v. Sunvest Communities USA, LLC*, 637 F. Supp. 2d 1045,

1063 (S.D. Fla. 2009) to assert that the boilerplate merger language in the 2008 Purchase

Agreement does not meet the standard for waiving or forfeiting misrepresentation claims

under Florida law. [DE 209, p. 2]. But the parties in *Gastaldi* did not enter into a second

contract for sale of the unit under an agreement that specifically provided that the first

contract would be terminated, as the parties did here. Nor does *Gastaldi* address the effect

of a second contract on a buyer's ability to bring a private cause of action to sue under § 1709

for claims based on the disclosures concerning the first, terminated, contract.

Examination of the damages sought by Plaintiffs illustrates the illogic of their position

that their ILSA claims survive the termination of the 2006 Contract. Plaintiffs state that they

seek "rescission of their agreement to purchase the condominium unit", arguing that

rescission would restore the parties to the "status quo *ex ante*." [DE 205, p. 4]. But Plaintiffs

do not explain how the 2006 Contract, which was terminated and replaced by the 2008

Contract, can be rescinded. The only sale that could be rescinded is the sale made pursuant

---

[3] In addition to a private right of action for sales in violation of ILSA, the Act provides for the civil enforcement proceedings and criminal fines and imprisonment for violations of its disclosure provisions. *See* 15 U.S.C. §§ 1714, 1715. Thus, the statutory scheme contemplates that violations of ILSA made in connection with an "offer to sell" will be handled through government enforcement, rather than private lawsuits.

to the 2008 Contract, and Plaintiffs have made no claim of an ILSA violation in connection with that contract.

## B.    The waiver provision in ILSA is inapplicable

Plaintiffs also argue that to the extent the language in the Amendment to Purchase Agreement and 2008 Contact, that declares the original 2006 Contract terminated and void, results in a waiver of their ILSA claims, these terms should not be enforced because ILSA expressly prohibits contractual provisions that waive its requirements. [DE 209, p. 2]. ILSA provides: "Any condition, stipulation, or provision binding any person acquiring any lot in a subdivision to waive compliance with any provision of this chapter or of the rules and regulations of the Secretary shall be void." 15 U.S.C. § 1712.

This provision has been interpreted to bar the enforcement of prospective waivers of the requirement that a developer comply with ILSA, not retrospective agreements that may have the effect of foreclosing an ILSA claim. *Rensin v. Juno-Loudon, LLC*, No. 1:09cv1391 (JCC), 2010 WL 1138318, * 3 (E.D. Va. March 17, 2010) (finding that a release entered into more than 2 years after the sale as part of a separate agreement between the parties, was not barred by § 1712 because it "does not prospectively 'waive compliance' but instead retrospectively releases any other claims . . .").[4]  No prospective waiver occurred here.

---

[4] Plaintiffs argue that enforcing the waiver prohibition would allow a developer to take advantage of a purchaser who entered into a contract based on representations that violated ILSA, and made a substantial deposit, and who might feel forced to enter into a subsequent agreement with the developer that included a waiver any ILSA claims arising out of the original contract. [DE 205, p. 4, n. 4]. At least one court has rejected a similar argument. *See Rensin*, 2010 WL 1138318, * 4 (court enforced waiver language in an agreement that had the effect of releasing ILSA claim that

Rather, the parties merely terminated one agreement to purchase (the 2006 Contract) and entered into a replacement agreement (the 2008 Contract). Under these circumstances, Section 1712 is inapplicable.

In summary, I hold that Plaintiffs cannot bring their ILSA claims in connection with the terminated 2006 Contract because the private right of action that arises under 15 U.S.C. § 1709(a) to sue for violations of ILSA only arises in connection with a sale. Plaintiffs' only alleged ILSA violations are associated with a contract for sale, the 2006 Contract, that the parties terminated. Thus, Defendants are entitled to summary judgment in their favor on Counts I and VI of the Second Amended Complaint.[5]

---

arose under earlier contract, despite plaintiffs' claim that they were fraudulently induced to enter into earlier contract). Moreover, on this record, there is no evidence that this is what took place here. Rather, the undisputed evidence is that the Amendment and 2008 Contract were triggered by the appraiser's conclusion that the value of the Unit was less than the original sale price. [DE 151-2, p. 44].

   [5] Because of this holding, I do not address Defendants' argument that the marina was not a "recreational facility," nor do I decide whether reliance is an element of a claim under § 1703(a)(2). I note, however, that to the extent some of Plaintiffs' other claims, such as fraudulent and negligent misrepresentation, require proof of reliance, it would appear from this record unlikely that Plaintiffs could establish that proof. *See Weaver v. Opera Tower, LLC*, No. 07-23332, 2008 WL 4145520, *2 (S.D. Fla. Aug. 1, 2008)("it is well-settled that a contracting party may not, as a matter of law, reasonably rely upon prior written or oral misrepresentations expressly contradicted by a subsequent written agreement"); *Garcia v. Santa Maria Resort, Inc.*, 528 F.Supp.2d 1283, 1295 (S.D. Fla. 2007) ("Reliance on fraudulent representations is unreasonable *as a matter of law* where the alleged misrepresentations contradict the express terms of the ensuing written agreement.") (quotations omitted, emphasis in original).

III.    **Conclusion**

Based on the foregoing, the Court ORDERS that:

1.      The stays of Plaintiffs' Motion for Summary Judgment [DE 173], and Defendants Fifield Realty Corp.'s and Ocean Marine Yacht Club, LLC's Motion for Summary Judgment [DE 174] are lifted and the Clerk's Office is directed to reactivate these motions.

2.      Plaintiffs' Motion for Summary Judgment [DE 173] is DENIED with prejudice as to Counts I and VI and DENIED WITHOUT PREJUDICE as to the remaining counts.

3.      Defendants Fifield Realty Corp.'s and Ocean Marine Yacht Club, LLC's Motion for Summary Judgment [DE 174] is GRANTED as to Counts I and VI and DENIED WITHOUT PREJUDICE as to the remaining counts.

4.      Plaintiffs' Motion to Strike Declaration of Jeanne Peck as Untimely Filed [DE 188] is DENIED because Plaintiffs suffered no prejudice from the short delay caused by Defendants' inadvertent failure to file the declaration.

5.      The parties shall mediate their remaining claims **no later than November 24, 2010**.

6.      The parties shall file any renewed motions for summary judgment **no later than December 1, 2010**.

7.      The pretrial and trial deadlines in this action are modified as follows:

   a.      **Trial Date**. This case is specially set for a jury trial commencing at **9**

12

**a.m. on March 22, 2010**, before me at the C. Clyde Atkins Courthouse, 301 North Miami

Avenue, Miami, Florida, Sixth Floor.

        b.    **Pretrial Conference**. A pretrial conference shall be held on **March 12,**

**2010 at 10:00 a.m**. at the C. Clyde Atkins Courthouse, 301 North Miami Avenue, Miami,

Florida, Sixth Floor.

        c. **No later than February 25, 2010**, the parties shall file:

        (I) *joint* pretrial stipulation pursuant to Local Rule 16.1.E. The witness lists shall be pared down to those witnesses the parties actually intend to call at trial; and the exhibit lists shall identify the witness introducing each exhibit. The Court will not accept unilateral pretrial stipulations, and will strike, *sua sponte*, any such submissions, and

        (ii) *joint* proposed jury instructions. To the extent a party objects to a particular instruction, the objecting party shall provide either a competing instruction or citation to the authorities supporting its objection. The parties shall also provide a copy of the joint proposed jury instructions to chambers in the WordPerfect format, and

        (iii) all motions in limine. The motions shall be limited to two pages per evidentiary issue, and shall identify the evidence sought to be precluded and the legal authority supporting exclusion.

        d.    **No later than March 3, 2010**, the parties shall file any responses to

motions in limine. The responses shall also be limited to two pages per evidentiary issue, and

shall provide a statement of the purpose for which the challenged evidence would be offered

and the legal authority supporting the admissibility of such evidence.

DONE and ORDERED in chambers in Miami, Florida this 29th day of September, 2010.

CHRIS McALILEY
UNITED STATES. MAGISTRATE JUDGE

cc:  Counsel of record

14